IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JENNIFER M. CISNEROS,                §
                                     §
          Petitioner,                §
                                     §
v.                                   §          CIVIL ACTION NO. H-05-3494
                                     §
FEDERAL BUREAU OF PRISONS,           §
                                     §
          Respondent.                §

## MEMORANDUM AND ORDER

Federal prison inmate Jennifer M. Cisneros (#41854-180) has filed a petition for a writ

of habeas corpus under 28 U.S.C. § 2241, seeking relief from a policy decision made by the

United States Bureau of Prisons and its effect on her sentence.  After reviewing all of the

pleadings  and the applicable law, the Court concludes that this case must be **dismissed** for

reasons that follow.

## I.      BACKGROUND

According to the pleadings, Cisneros was sentenced on August 3, 2004, to serve a

term of eighteen months in federal prison by the United States District Court for the Western

District of Texas, El Paso Division, following her conviction for importation of a controlled

substance. *See United States v. Montalvo*, Crim. No. 3:04-0086 (W.D. Tex.).  The sentencing

court reportedly recommended that Cisneros be placed in the Intensive Confinement Center

("ICC") or "boot camp" program.  Cisneros does not challenge the validity of her underlying

conviction.  Instead, Cisneros contends that she is entitled to federal habeas corpus relief

under 28 U.S.C. § 2241 because the United States Bureau of Prisons (the "BOP") terminated its boot camp program for budgetary reasons in January of 2005, after her sentence was imposed.

The petitioner seeks federal habeas corpus relief, arguing that the abrupt cancellation of the boot camp program violated the notice-and-comment requirement for agency rule making under the Administrative Procedure Act and the congressional mandate in the governing statute. She complains further that the cancellation violated the Due Process Clause because she was sentenced based on misinformation. In addition, she contends that the cancellation has retroactively extended her sentence in violation of the Ex Post Facto Clause. The petitioner asks this Court to correct her sentence to conform to the sentencing court's original intent by re-sentencing her to six months of imprisonment, followed by six months in a halfway house and six months in home confinement. The Court concludes, for reasons discussed below, that the petitioner is not entitled to the relief that she seeks under 28 U.S.C. § 2241.

## II.   STANDARD OF REVIEW

A petition for a writ of habeas corpus under 28 U.S.C. § 2241 is correctly used to challenge the manner in which a sentence is executed. *See Reyes-Requena v. United States*, 243 F.3d 893, 900-01 (5th Cir. 2001). A § 2241 petition that attacks the manner in which a sentence is carried out or a determination affecting the length of its duration "must be filed in the same district where the prisoner is incarcerated." *Pack v. Yusuff*, 218 F.3d 448, 451

(5th Cir. 2000) (citations omitted).   Because the petitioner is in custody at the nearby Federal Prison Camp in Bryan, Texas, this Court has jurisdiction over her petition.

To prevail, a habeas corpus petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a federal district court may dismiss a habeas corpus proceeding if it appears from the face of the petition that the petitioner is not entitled to relief.  *See Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (discussing summary dismissal under Rule 4 of the Rules Governing Section 2254 Cases); *see also* 28 U.S.C. § 2243.

## III.    THE BOOT CAMP PROGRAM

The boot camp program formerly run by the BOP was authorized by the Crime Control Act of 1990, Pub. L. No. 101-647, § 3001, 104 Stat. 4789, codified at 18 U.S.C. § 4046.  Pursuant to that statute, Congress provided that the Bureau of Prisons "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months." 18 U.S.C. § 4046(a). Congress envisioned that participants in this program would "adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training," while completing educational or rehabilitative programs.  18 U.S.C. § 4046(b).  Consistent with this statute, the BOP developed a "specialized program

combining features of a military boot camp with the traditional correctional values" of the BOP, the goal of which was to "promote personal development, self-control, and discipline." 28 U.S.C. § 524.30.  An inmate who successfully completed the institution-based component of the program ordinarily could have been eligible to serve the remainder of her sentence in a community-based program, and if successful there and had a period of supervised release to follow, would have been eligible for up to a six-month reduction in her sentence.  *See* 28 C.F.R. § 524.32(d).

The BOP established a boot camp program for female inmates at the Federal Prison Camp in Bryan, Texas, where the petitioner presently resides. (*U.S. Dep't of Justice*, Federal Bureau of Prisons, Institution Supplement BRY 5390.08D, January 31, 2004).  Inmates who met the eligibility requirements and who were approved for participation could be placed in the program for six months.  (*Id.*).  Participation in the boot camp program was voluntary. (*Id.*).  In that respect, inmates arriving at the Federal Prison Camp were obliged to submit an inmate request form to a staff member to advise the BOP of their desire to participate in the program.  (*Id.*).  Once an inmate applied to participate in the boot camp program, participation was contingent on the successful completion of a psychological and medical screening process to determine the inmate's mental and physical abilities.  (*Id.*).  Unit management staff also completed a review of the inmate's file to determine whether her participation in the boot camp program was appropriate.  (*Id.*).

4

In a memorandum dated January 14, 2005, BOP Director Harley G. Lappin issued a memorandum to the federal judiciary and other court personnel to announce that inmates would no longer have the option to participate in the boot camp program, which would terminate immediately after those currently enrolled had completed the program. (*Memorandum for Federal Judges, Chief Probation Officers, Federal Public Defenders, and United States Attorneys*, January 14, 2005, from Director Harley G. Lappin).  Director Lappin explained that the BOP's decision followed a "national trend among correctional agencies" to phase out such programs based on lack of success and costliness.  (*Id.*).  He reported that, "[d]espite anecdotal successes, research has found no significant difference in recidivism rates between the inmates who complete boot camp programs and similar offenders who serve their sentences in traditional institutions."  (*Id.*).  Director Lappin explained that the costs associated with maintaining federal boot camp programs far exceeded the costs of operating ordinary minimum security prison camps.  (*Id.*).  "The lack of significant beneficial results, coupled with recent budgetary constraints," led the BOP to conclude that it could "no longer justify the expenditure of public funds to operate the [boot camp] programs."  (*Id.*).

## II.   DISCUSSION

### A.   Exhaustion

The Court notes that the petitioner has failed to exhaust her administrative remedies before filing this suit.  The Fifth Circuit has determined that a federal prisoner seeking relief

under 28 U.S.C. § 2241 "must first exhaust his administrative remedies through the Bureau of Prisons." *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993) (citing *United States v. Gabor*, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (citations omitted); *Lundy v. Osborn*, 555 F.2d 534, 534-35 (5th Cir. 1977) ("[G]rievances of prisoners concerning prison administration should be presented to the Bureau [of Prisons] through the available administrative channels. Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.") (citations omitted)).

The BOP has established a three-tiered administrative remedy procedure for federal prisoners. *See* 28 C.F.R. §§ 542.10 – 542.19 (2003).  Under this system, an inmate may file a formal grievance with the warden if informal resolution is not successful.  *See id.* at § 542.13.  Once the warden denies an inmate's grievance, the prisoner may appeal to the Regional Director.  If dissatisfied with that response, the inmate may pursue a final appeal to the BOP's Office of General Counsel.  *See id*. at § 542.15(a).  Administrative remedies have not been exhausted until the inmate's claim has been filed and denied at all levels.  *See Irwin v. Hawk*, 40 F.3d 347, 349 n.2 (11th Cir. 1994), *cert denied*, 516 U.S. 835 (1995).

The petitioner concedes that she has failed to pursue administrative remedies.  She argues that exhaustion would be futile, however, because the decision to terminate the boot camp program was final.  This would be true if the petitioner's sole objective was to gain entry into the boot camp program.  She does not request this type of relief.  Instead, she asks for modifications to her sentence in the form of a reduction in sentence, transfer to a halfway

house, and then home confinement.  To the extent that the petitioner seeks alternative sentencing benefits from the BOP, she does not clearly show that requiring exhaustion would be futile in this case.  Accordingly, her petition is subject to dismissal for this reason.

**B.      Standing**

The petitioner complains that she was harmed because she was denied the opportunity to participate in the boot camp program.  The petitioner does not allege or show that she had applied or that she had been screened for the program and found eligible to participate prior to the January 2005 memorandum announcing the program's termination.  Thus, the petitioner lacks standing to challenge the boot camp program's termination because she has not suffered an injury in fact.

Under Article III of the United States Constitution, federal court jurisdiction is limited to "cases" or "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Standing is a "core component" that is "an essential and unchanging part of the case-or-controversy requirement" found in Article III.  *Id.* At 560.  The "irreducible constitutional minimum of standing" requires the following three elements: (1) the plaintiff must have suffered an "injury in fact" – that is, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent," not "conjectural" or "hypothetical"; (2) there must be causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3)

it must be "likely" as opposed to merely "speculative" that the injury will be redressed by a favorable decision.  *Id.* at 560-61.

In this case, the petitioner has failed to meet the injury-in-fact requirement because she does not show that her participation in the program was guaranteed even if funding for the boot camp program had continued.  While the sentencing court may have recommended that the petitioner have the opportunity to participate in this program, it had no authority to require her participation.  Congress and the Attorney General have delegated authority to the BOP to administer the federal prison system.  *See* 18 U.S.C. §§ 4001, 3621 (vesting control and management of federal prisons with the Attorney General and custody of those convicted to the BOP); 28 C.F.R. § 0.96 (delegating authority, functions, or duties imposed on the Attorney General regarding the treatment of prisoners to the BOP).  Under 18 U.S.C. § 3621(b), the BOP has the authority to decide the place of a prisoner's imprisonment.  *See United States v. Wilson*, 503 U.S. 329 (1992) (recognizing that only the Attorney General, through the BOP, has authority to administer a prison sentence).

The Fifth Circuit has recognized that "only the Bureau of Prisons has the actual authority to designate the place of incarceration" because "the executive branch and not the judicial branch is responsible for administering sentences." *United States v. Voda*, 994 F.2d 149, 151-52 (5th Cir. 1993); *see also United States v. Serafini*, 233 F.3d 758, 778 n.23 (3d Cir. 2000) ("[A] district court has no power to dictate or impose any place of confinement for the imprisonment portion of the sentence.  Rather, the power to determine the location

8

of imprisonment rests with the Bureau of Prisons.").  Importantly, authority to place an inmate in the boot camp program was specifically vested within the "sound correctional judgment" of the BOP and entirely dependent upon the "availability of Bureau resources." 28 C.F.R. § 524.31(b).  Thus, consideration for placement in the boot camp program was solely within the BOP's discretion.  *Id.*; *Gissendanner v. Menifee*, 975 F.Supp. 249, 251 (W.D.N.Y. 1997).

The petitioner does not allege or show that BOP officials would have transferred her to the boot camp program if this alternative were still available.  The petitioner does not allege that she had applied for admission or that BOP officials had screened her for the boot camp program at the Bryan Federal Prison Camp.  She does not claim that she had either begun or completed any orientation.  She does not specifically allege that she would have wanted to participate in the strict boot camp regime, which required participants to forego other opportunities and privileges.  *See* 18 U.S.C. § 4046(b) (outlining the strict discipline, and physical training characteristic of military-style boot camp); 28 C.F.R. § 524.32(a) (explaining that eligible inmates must "forego opportunities which may be otherwise available," including but not limited to "visitation, telephone use, legal research time, religious practices, commissary, smoking, and grooming preferences").  Further, there is no showing that the petitioner was eligible to participate in the rigorous program or that BOP officials would have accepted her after careful screening.  Even assuming that the petitioner

9

was deemed eligible and accepted into the program, there is no showing that she would have completed the rigorous program such that she would be entitled to the relief she seeks.

In an effort to establish the requisite standing, the petitioner points to the sentencing judge's recommendation that she be allowed the opportunity to participate in the boot camp program. Thus, the petitioner complains that cancellation of the boot camp program has frustrated the sentencing court's intent. To correct the "illegal execution" of her sentence, she asks this Court to re-sentence her to serve six months of imprisonment, six months in a halfway house, followed by six months of home confinement. To the extent that the petitioner directly challenges the legality of her sentence, this request for relief belongs in a motion under 28 U.S.C. § 2255 collaterally attacking her sentence. *See United States v. Gabor*, 905 F.2d 76, 78 (5th Cir. 1990) (A challenge "directed toward the sentence itself . . . [is] cognizable only under 28 U.S.C. § 2255."); *see also United States v. Addonizio*, 442 U.S. 178 (1979) (discussing the difference between a challenge properly brought under 28 U.S.C. § 2255 to the sentence imposed and a challenge to the way in which the sentence is administered). A motion under 28 U.S.C. § 2255 must be presented to the sentencing judge. *See* Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 4(a).

Because a petition under § 2241 only allows the Court to correct errors in the administration of a sentence, the only way the petitioner can show that she is entitled to relief is to demonstrate that she has been denied a sentence reduction that she has already earned.

At a minimum, the petitioner would have to establish that she had been accepted to the boot camp program in order to show that she was eligible for the benefits of completing this program.  *See* 28 C.F.R. § 524.32(d) (outlining the possibility that an inmate who successfully completes the boot camp program may serve some portion of her remaining sentence in a community-based program with a potential reduction in sentence).  As another district court has noted, a petitioner who was not already eligible to begin the boot camp program at the time of its termination cannot show that the decision to terminate the program affected her directly such that she suffered an injury in fact because actual admission to the program was too speculative: "Even if [the petitioner] had met the length-of-sentence requirement at that time such that she arguably suffered an injury in fact when the program was terminated, her future acceptance into the program is within the discretion of the Bureau of Prisons and thus the threat of future injury would be too speculative to find Article III standing to seek the prospective relief requested . . . ." *Alpert v. Lappin*, 2005 WL 1610718, *2 (M.D. Fla. July 5, 2005) (citing *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1265-66 (11th Cir. 2001)); *see also Barnes v. Lappin*, 2005 WL 2456229, *2 (M.D. Fla. Oct. 5, 2005) (finding that a petitioner who did not meet the eligibility criteria for the boot camp program and thus had not been accepted by January 2005, had no cognizable interest in the boot camp program and suffered no injury-in-fact as the result of its termination).

Because the petitioner fails to allege or show that she had applied for and had been accepted into the rigorous boot camp regime, but denied the benefit of her participation

because of the program's cancellation, she fails to demonstrate the requisite injury in fact for bringing a challenge under 28 U.S.C. § 2241. Absent a showing that the petitioner meets the threshold requirement of Article III standing, this Court lacks jurisdiction over the subject matter of her challenge. *See Lucero v. Federal Bureau of Prisons*, Civil No. H-05-3014, 2005 WL 3307091 (S.D. Tex. Dec. 5, 2005) (rejecting a habeas petition challenging the boot camp program's termination for lack of standing).

Alternatively, the Court concludes that the petitioner's arguments under the Administrative Procedure Act, the Due Process Clause, and the prohibition against retroactive or ex post facto laws are without merit for other reasons. These claims are addressed briefly below.

### C.      Administrative Procedure Act

The petitioner complains that the BOP terminated the boot camp program in violation of the Administrative Procedure Act (the "APA"). Specifically, the petitioner argues that the BOP cancelled the boot camp program in violation of the "notice-and-comment" requirement for agency rule making under the APA. Assuming that review under the APA is proper, the petitioner has failed to demonstrate a violation of the notice-and-comment requirement.

Implicitly, the petitioner argues that the BOP exceeded its statutory mandate when it cancelled the boot camp program because it lacked discretion to terminate the program. Whether the BOP had discretion to terminate the boot camp program is a question governed by the two-step framework for statutory interpretation established by the Supreme Court in

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under this two-step analysis, a reviewing court must first look to the language of the statute itself to determine "whether Congress has directly spoken to the precise question at issue," *i.e.*, is the statutory language clear and unambiguous, and if so, "that is the end of the matter." *Chevron*, 467 U.S. at 842-43. Thus, the Court considers the statute authorizing the BOP to operate boot camp programs in the first place.

The statute authorizing boot camp programs provides that the BOP "*may* place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months, if such person consents to the placement." 18 U.S.C. § 4046(a) (emphasis added). In statutory construction, "[t]he word 'may' customarily connotes discretion." *Jama v. Immigration and Customs Enforcement*, — U.S. —, 125 S. Ct. 694, 703 (2005); *see also Lopez v. Davis*, 531 U.S. 230, 241 (2001) (contrasting Congress' use of the "permissive 'may'" with the "mandatory 'shall'"). By using the word "may" instead of "shall," 18 U.S.C. § 4046(a) gives the BOP discretion to operate its boot camp program – including the discretion whether to operate one at all. *See Castellini v. Lappin*, 365 F. Supp. 2d 197, 202 (D. Mass. 2005) ("[T]his Court agrees with the agency's reasonable interpretation of the word 'may' in § 4046, and holds that Congress intended to authorize the BOP to operate a boot camp program but did not intend to require operation of such a program.").

13

The statutory language clearly and unambiguously states that the BOP may operate a boot camp program, but that it is not required to do so.  In other words, the BOP's decision about whether to operate a boot camp program or not is discretionary as a matter of law, and not mandatory.  The Supreme Court has held that decisions to discontinue programs that are committed to an agency's discretion by law are not subject to judicial review under the APA.  *See Lincoln v. Vigil*, 508 U.S. 182, 193 (1993).  As the Court explained, "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes . . . ."  *Id.* at 193.  Congress did not appropriate funds specifically for the boot camp program.  *See Castellini*, 365 F. Supp. 2d at 199.  Congress instead allocated funds to the BOP on a lump-sum basis.  *See United States v. Serrato*, 2005 WL 1661831, *1 (D. Or. July 14, 2005).  Under these circumstances, the BOP's decision to allocate its resources elsewhere as it sees fit is within its discretion and, therefore, its decision to terminate the boot camp program for budgetary reasons is not subject to judicial review under the APA.

In the same manner, decisions regarding a prisoner's designation by the BOP are also made in an exercise of the agency's discretion.  *See United States v. Sneed*, 63 F.3d 381, 389 n.6 (5th Cir. 1995) (declining to consider a defendant's request for home confinement "because such requests are properly directed to the Bureau of Prisons") (citing 18 U.S.C. § 3624(c) (providing that Bureau of Prisons has the authority to "place a prisoner in home confinement"); *Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992)

14

("Nothing in § 3624(c) indicates any intention to encroach upon the Bureau's authority to decide where the prisoner may be confined during the pre-release period."), *cert. denied*, 510 U.S. 830 (1993)).  Because decisions regarding the designation of inmates to a particular prison program or facility are discretionary, these agency actions are not subject to review under the APA.

Even if the BOP's decision to terminate the boot camp program was subject to review under the APA, the petitioner fails to establish a violation of the notice-and-comment requirement.  "In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment."  *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979).  To further that goal, the notice-and-comment provision of the APA requires that, subject to certain exceptions, administrative agencies must give "[g]eneral notice of proposed rule making" by publication in the Federal Register, unless persons subject to the proposed rule "are named and either personally served or otherwise have actual notice thereof in accordance with law."  5 U.S.C. § 553(b).  After the requisite notice is given, the APA requires that the agency proposing the particular rule "shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation."  *Id.* at § 553(c).

The Court is not persuaded that the BOP's decision to terminate the boot camp program is a rule of the sort subject to the notice-and-comment requirement found in the APA, as opposed to a general statement of policy. The notice-and-comment provision has been held to apply whenever an agency promulgates a substantive, "legislative-type" rule intended to have binding, legal effect. *Chrysler Corp.*, 441 U.S. at 301-02 (citing *Morton v. Ruiz*, 415 U.S. 199, 236 (1974)). By contrast, the notice-and-comment requirement expressly excludes "general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln*, 508 U.S. at 197 (citing *Chrysler Corp.*, 441 U.S. at 302 n.31) (citation omitted).

As outlined above, the BOP elected to terminate the boot camp program because of budgetary constraints and its conclusion that the program failed to further correctional goals by reducing recidivism. Congress allocates funds to the BOP on a lump-sum basis, and made no specific appropriation for a boot camp program. *See Serrato*, 2005 WL 1661831, at *1. Because the decision to terminate the boot camp program discontinues a discretionary allocation of unrestricted funds, the decision qualifies as a general statement of BOP policy. *See Lincoln*, 508 U.S. at 197 ("Whatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum

appropriation."). As a general statement of policy, the BOP's decision to end the boot camp program is not a rule making decision under the APA and is therefore exempt from the notice-and-comment requirement. *See United States v. McLean*, 2005 WL 2371990, *4 (D. Or. Sept. 27, 2005) (finding that the BOP's decision to terminate the boot camp program did not issue new rules or regulations regarding participation in the boot camp program, but issued a general statement of policy that it will reallocate resources and no longer fund the program); *Mares v. Federal Bureau of Prisons*, Civil No. H-05-3805, 2005 WL 3263916, *2 (S.D. Tex. Nov. 28, 2005) (same). For all of the foregoing reasons, the petitioner fails to demonstrate a violation of the APA.

### D.   The Due Process Clause

The petitioner contends that eliminating the sentencing benefit afforded following successful completion of the boot camp program is a due process violation. The petitioner suggests that, in imposing her punishment, the sentencing court relied upon the continued existence of the boot camp program and might have reduced her sentence had it known the program was about to be terminated. The petitioner maintains therefore that her sentence violates the Due Process Clause because it was based on misinformation.

To the extent that the petitioner alleges that her sentence is unlawful because it was based on a material misunderstanding, her claim challenges the sentence. As noted above, that claim belongs in a motion filed with the sentencing court under 28 U.S.C. § 2255. This Court, which did not impose the petitioner's sentence, has no jurisdiction to consider that

type of claim.  *See, e.g., Fason v. Sanders*, 2005 WL 2897041 (E.D. Ark. Nov. 3, 2005) (observing that whether participation in a boot camp program was a material part of the sentence imposed is a question that can only be addressed to the sentencing judge in a motion pursuant to § 2255) (citing *United States v. McLean*, 2005 WL 2371990 (D. Or. Sept. 27, 2005)).

To the extent that the petitioner complains that termination of the boot camp program affects the way in which her sentence will be performed, such a challenge is actionable under 28 U.S.C. § 2241.  *See United States v. Addonizio*, 442 U.S. 178 (1979); *Serrato*, 2005 WL 1661831, at *4.  In this context, however, the petitioner has no general due process right to participate in the boot camp program, which was always contingent upon the "sound correctional judgment" of the BOP and the "availability of Bureau resources."  28 C.F.R. § 524.31(b).  A prisoner does not have a constitutional due process right to incarceration in a particular place or at a particular institution.  *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976).  As noted above, decisions regarding classification and designation of inmates to a particular prison facility or program are vested within the BOP.  *See* 18 U.S.C. § 3621(b). A sentencing court may make a recommendation, but it has no power to dictate the place or manner of imprisonment.  *See, e.g., Voda*, 994 F.2d at 151-52; *Serafini*, 233 F.3d at 778 n.23.

In this instance, the sentencing court was not misinformed regarding the availability of the boot camp program at the time it imposed punishment.  Thus, for purposes of

obtaining relief under § 2241, the petitioner fails to show that the sentencing court imposed sentence based on misinformation of constitutional magnitude.  *See Addonizio*, 442 U.S. at 187; *Serrato*, 2005 WL 1661831, at *5-6; *Mares*, 2005 WL 3263916, at *3.  Accordingly, the petitioner fails to articulate a due process violation in connection with the manner in which her sentence has been performed.  The Court expresses no view about whether the petitioner's due process claim could be successful in a proceeding governed by 28 U.S.C. § 2255.  It merely concludes that the petitioner is not entitled to relief from her sentence under § 2241 for an alleged violation of due process.

### E.    Ex Post Facto Claims

The petitioner argues that terminating the boot camp program has retroactively increased her sentence in violation of the Ex Post Facto Clause.  Article I, Section 9 of the United States Constitution provides that "[n]o . . . ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.  Among those laws prohibited by this provision are those that "make[] more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (citation and quotation omitted).  "Not every retroactive procedural change creating a risk of affecting an inmate's term or conditions of confinement is prohibited." *Garner v. Jones*, 529 U.S. 244, 250 (2000).  The Supreme Court has clarified that "the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's 'opportunity to take advantage of provisions for early release,' . . . but on whether

any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *California Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995) (citation omitted).

The Fifth Circuit has rejected an ex post facto challenge to a retroactive change in BOP policy that denied early release to prisoners who were convicted of certain violent offenses, a change which directly affected the possibility of a prisoner's release. *Wottlin v. Fleming*, 136 F.3d 1032 (5th Cir. 1998). In doing so, the Fifth Circuit found no ex post facto violation where a change in prison policy was "merely a categorical determination by the BOP that it will not exercise [its] discretion in the case of inmates with a prior conviction for certain specified crimes." *Id.* at 1038. The categorical decision to terminate the boot camp program merely affects the opportunity to participate in a discretionary program, the successful completion of which may allow for an early release. The decision did not increase the sentence imposed. In an unpublished opinion, the Fifth Circuit found no ex post facto violation where application of a BOP program statement such as the one at issue here "merely deprived [the petitioner] of an opportunity to take advantage of a discretionary early-release provision." *Alexander v. Wendt*, No. 04-10868, 127 Fed.Appx. 695 (5th Cir. April 1, 2005) (citing *Wottlin*, 136 F.3d at 1037-38). Other courts that have addressed this issue have also found that there is no ex post facto violation where, as here, the petitioner was never provisionally accepted into the boot camp program. *See Mares*, 2005 WL 3263916, *4; *Fason*, 2005 WL 2897041, at *7; *McLean*, 2005 WL 2371990, at *4.

The petitioner also hints that, beyond an ex post facto analysis, the BOP cannot cancel the boot camp program because this retroactively alters her settled expectation based on the sentencing judge's recommendation as to her eligibility.  In some situations, federal agencies should not retroactively apply new rules.  *See Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 208 (1998); *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).  However, the holding in *Bowen* does not apply here to bar the BOP from cancelling a program based on its determination that the program is not effective and that the funds expended on such a program would be better spent elsewhere.

As noted, the petitioner does not allege or show that she had applied or that she had been accepted into the boot camp program prior to its termination.  She fails to establish that the BOP's decision to terminate the program has disrupted any settled expectations.  *Cf. Byrd v. Moore*, 252 F. Supp. 2d 293 (W.D.N.C. 2003) (addressing the settled expectations of petitioners already lived in a halfway house who challenged the BOP's decision to cancel the halfway house program and return them to prison).  Thus, the legal principle proscribing the retroactive use of modifications of the law embraced in *Landgraf* and *Bowen* does not apply here.  *See Mares*, 2005 WL 3263916, at *4.  Therefore, the petitioner fails to demonstrate an ex post facto violation or any inappropriate retroactive application of a BOP policy.

## V.   CONCLUSION AND ORDER

In summary, the petitioner has failed to show that she is entitled to the relief that she seeks under 28 U.S.C. § 2241.  Absent a showing by the petitioner that she is entitled to

federal habeas corpus relief under § 2241, this case must be dismissed.  Accordingly, the

Court **ORDERS** as follows:

1.      The petition for a federal writ of habeas corpus (Docket Entry No. 1) is

    **DENIED**, and this case is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas this 30th day of December, 2005.


_____

Nancy F. Atlas

United States District Judge

22